UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHANG VANG,

Plaintiff,

v.

WAL-MART ASSOCIATES, INC.,

Defendant.

No. 2:25-cv-02639-DAD-JDP

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

(Doc. No. 8)

This matter is before the court on plaintiff's motion to remand this action to the Sacramento County Superior Court. (Doc. No. 8.) The pending motion was taken under submission on the papers. (Doc. No. 16.) For the reasons explained below, plaintiff's motion to remand will be denied.

**BACKGROUND**

On July 22, 2025, plaintiff Chang Vang filed a complaint in the Sacramento County Superior Court on behalf of himself and all others similarly situated against defendant Walmart Associates, Inc. and unnamed Doe defendants 1–50. (Doc. No. 1 at 63.) As relevant to the resolution of the pending motion, plaintiff's complaint alleges as follows.

Plaintiff was employed by defendant in California from October 2021 to October 2024. (*Id.* at 12.) Plaintiff claims that defendant failed to accurately pay him and the other California

Sub-Class members the "correct minimum wage."[1] (*Id.* at 29.) This and other alleged unlawful wage and hour practices were "companywide policies and practices," (*id.* at 19–20), and applied "without limitation" to the Sub-Class "as a whole" (*id.* at 39). As of the filing of the complaint, plaintiff and "many" Sub-Class members no longer work for Walmart and the company had not paid them "all wages owed as required by law." (*Id.* at 51.) To the extent defendant owes "these individuals" their "minimum wage compensation," the terminated Sub-Class members are "entitled" to waiting time penalties under California Labor Code § 203. (*Id.* at 40.) Plaintiff seeks such penalties "on behalf of these" members, *Id.*, and demands "thirty days of pay as penalty." (*Id.* at 51.)

Based on these and other allegations, plaintiff asserts the following cause of action on behalf of himself and the California Class: (1) Unlawful Business Practices in violation of California Business and Professions Code § 17200. (*Id.* at 35–38.) In addition, plaintiff asserts the following causes of action on behalf of himself and the putative California Labor Sub-Class: (2) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) failure to pay overtime compensation in violation of California Labor Code § 510; (4) failure to provide required meal periods in violation of California Labor Code §§ 226.7, 512(a); (5) failure to provide required rest periods in violation of California Labor Code §§ 226.7, 512; (6) failure to provide accurate itemized statements in violation of California Labor Code § 226; (7) failure to reimburse employees for required expenses in violation of California Labor Code § 2802; (8) failure to pay wages when due in violation of California Labor Code §§ 201, 202, 203; (9) failure to pay sick pay wages in violation of California Labor Code §§ 201, 202, 203, 233, 246; and (10) failure to comply with California quota laws in violation of California Labor Code § 2100. (*Id.* at 38–57.)

---

[1] Plaintiff seeks to represent a California Class, defined as all individuals who are or previously were employed by defendant in a California distribution center and classified as non-exempt employees at any time during the four years prior to the filing of the complaint and ending on a date to be determined by the court. (*Id.* at ¶ 31.) Plaintiff also seeks to represent a California Labor Sub-Class, which differs from the California Class in that the period is limited to the three years prior to the filing of the complaint and ending on a date to be determined by the court. (*Id.* at ¶ 41.)

On September 12, 2025, defendant removed the action to this federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 on the grounds that this court has jurisdiction under the Class Action Fairness Act ("CAFA"). (*Id.* at 2.) On October 10, 2025, plaintiff filed the pending motion to remand this action to the Sacramento County Superior Court. (Doc. No. 8.) On October 24, 2025, defendant filed its opposition to the motion and a request for judicial notice.[2] (Doc. Nos. 11, 12.) On November 3, 2025, plaintiff filed his reply. (Doc. No. 17.)

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. However, "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case

---

[2] The court need not consider the documents listed in defendant's request for judicial notice (Doc. No. 12) in resolving plaintiff's pending motion to remand. Accordingly, that request is denied as moot. *See Langer v. Music City Hotel LP*, No. 21-cv-04159-PJH, 2021 WL 5919825, at *5 (N.D. Cal. Dec. 15, 2021) ("The court does not consider this exhibit in deciding this motion, and it therefore denies as moot the request for judicial notice of the exhibit.").

removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

**ANALYSIS**

Defendant removed this putative class action under CAFA, claiming that there is minimal diversity, the putative class exceeds 100 members, and the amount in controversy in this action exceeds $5 million. (Doc. No. 1 at 4–6.) In his pending motion to remand, plaintiff argues that defendant has failed to meet its burden of establishing that the amount in controversy here exceeds $5 million.[3] (Doc. No. 8 at 11.)

Defendant argues that the waiting time penalties alone satisfy the CAFA amount in controversy requirement.[4] (Doc. No. 1 at 6.) Defendant calculates that the waiting time penalties associated with the claims asserted by plaintiff amounts to $9,135,000. (Doc. No. 11 at 27.) To calculate the waiting time penalties, defendant provides evidence that the Sub-Class consists of 5,800 former employees who worked an average of 3.5 hours at $15.00 an hour. (*Id* ). Defendant assumes that 100% of these former employees are owed waiting time penalties and that the full 30-day maximum penalty applies to each class member. (*Id.*) Plaintiff primarily argues in opposition that defendant's use of a 100% violation rate is unreasonable and unsupported based on the allegations of his complaint. (Doc. No. 17 at 7.)

In support of its amount in controversy calculation, defendant offers the declaration of Mr. Jeremy Anderson ("Anderson"), a Walmart employee, whose responsibilities include "HR functions" for California Walmart fulfillment centers. (Doc. No. 11-1 at ¶ 1.) Anderson declares

---

[3] Plaintiff does not dispute that the other requirements of CAFA are satisfied here. (*See* Doc. Nos. 8, 17.) Additionally, plaintiff's bare allegation that the amount in controversy does not exceed $5 million "does not resolve the amount-in-controversy question . . . ." *Standard Fire*, 568 U.S. at 596 (finding that the plaintiff's inclusion of a stipulation in the complaint promising that the class will seek damages of less than $5 million did "not resolve the amount-in-controversy question in light of his inability to bind the rest of the class.").

[4] Waiting-time penalties under California Labor Code § 203 are triggered when an employer "fails to pay an employee immediately upon termination (or, in certain circumstances, within 72 hours thereof)." *McGrath v. All Med. Pers., Inc*, No. 2:23-CV-05181-SB-PVC, 2023 WL 5507175, at *2 (C.D. Cal. Aug. 25, 2023). It is calculated as each employee's daily regular wage times the number of days the pay was late, up to 30 days. *Id.*

that he is familiar with data for employees working in California supply chain facilities,[5] including timekeeping, payroll, employee start and end date, and data identifying employee work locations. (*Id.* at ¶ 2.) After reviewing the relevant HR data, Anderson concluded that more than 5,800 California Walmart supply chain employees ended their employment between August 1, 2022, and August 1, 2025, the average shift of those employees was more than 3.5 hours, and they were paid a base hourly rate of more than $15.00 per hour.[6] (*Id.* at ¶¶ 4–7.) Plaintiff also does not challenge the accuracy of this evidence.[7] (*See* Doc. Nos. 8; 17.) Moreover, courts have held that defendants may rely upon such evidence in calculating the amount in controversy. *See* *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799 at *2 (9th Cir. Dec. 27, 2023) ("A defendant is permitted to rely on a declaration from an individual who has reviewed relevant employee payroll and wage data to support its amount in controversy allegations.");[8] *Marquez v. Southwire Co.*, No. 21-cv-00252-JGB-SP, 2021 WL 2042727, at *3–4 (C.D. Cal. May 21, 2021)

---

[5] While plaintiff uses the term "distribution center," (Doc. No. 1 at 27), in defining the class, Anderson declares that plaintiff "never worked at a Walmart Distribution Center," and instead worked at a "Walmart Fulfillment Center." (Doc. No. 11-1 ¶ 3.) Defendant points out that its supply chain business "operates a number of different types of supply chain facilities . . . [,]" including distribution and fulfillment centers, and that plaintiff "appears to use the term 'distribution center' to broadly describe these various . . . facilities." (Doc. No. 11 at 9.) Plaintiff does not dispute defendant's reading of the term as including all supply chain facility employees and appears to adopt it in his reply. (*See* Doc. No. 17 at 7.) Accordingly, the court will read plaintiff's complaint as referring to all supply chain employees.

[6] It appears that these numbers refer to the terminated Sub-Class employees who may be eligible to receive waiting time penalties.

[7] Plaintiff argues in reply that Anderson's 5,800 count of relevant employees is "inflated," because the numbers stated for the two sub-groups that comprise the "former Supply Chain employees"—former fulfillment and distribution center employees—add up to 5,700 and not 5,800. (Doc. No. 17 at 7.) However, Anderson notes that there are "more than" 3,800 former employees in the fulfillment centers and "more than" 1,900 in distribution centers. (Doc. No. 11-1 at ¶¶ 5, 8, 10.) Simply because Anderson provided minimum numbers for the two sub-groups does not indicate a "basic arithmetic mistake" as plaintiff claims. (Doc. No. 17 at 7.) Regardless, the outcome would not change even if the court were to calculate the amount in controversy using 5,700 instead of 5,800 employees because the court will conclude that the amount in controversy for waiting time penalties alone is nearly double the $5,000,000 minimum.

[8] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

(finding that the declaration from the defendant's director of finance disclosing the number of employees during the class period, the number of workweeks they worked, and their average hourly pay rate to be sufficient to support its amount in controversy calculation). Accordingly, the court concludes that the Anderson declaration is sufficiently reliable and also finds that, for purposes of calculating the amount in controversy, the Sub-Class is 5,800 former employees who worked an average of 3.5 hours at $15.00 an hour.

Having established defendant's direct evidence, the court now examines the reasonableness of defendant's assumptions, which provide the basis for its amount in controversy calculation. A removing defendant may use "a chain of reasoning that includes assumptions" in calculating the amount in controversy. *Ibarra*, 775 F.3d at 1199. "[T]hose assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." *Id.* They "can be 'founded on the allegations of the complaint' and do not necessarily need to be supported by evidence. The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Perez*, 131 F.4th at 808 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) and *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)). "What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Id.* at 808. For example, when the number of employees in a wage and hour class action is in dispute, it "may make sense to expect a defendant to introduce evidence" of that number because it can easily be "determined by examining the defendant's employment records." *Id.* In contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* (emphasis removed). In that case, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* Defendant assumes for its amount in controversy calculation that 100% of the Sub-Class members are entitled to waiting time penalties and that the thirty-day maximum penalty applies. (Doc. No. 1 at 7.) The court addresses each assumption in turn below.

/////

Defendant provides no direct evidence regarding the percentage of the 5,800 former employees who left their employment with wages owed them, thereby triggering waiting time penalties. (*See* Doc. Nos. 1, 11, 11-1.) Plaintiff's complaint alleges that defendant's "unlawful wage and hour practices[,]" which deprived employees of minimum wage, applies "without limitation" to the California Labor Sub-Class "as a whole." (Doc. No. 1 at 39.) Failure to pay minimum wages "entitles class members to waiting time penalties." *McGrath*, 2023 WL 5507175, at *3 (C.D. Cal. Aug. 25, 2023) ("The 'very nature' of a wage-and-hour class action 'requires [the] [p]laintiff to allege that putative class members have not received all wages owed in violation of the law.'") (citation omitted). Plaintiff argues that his use of "many" in the allegations of his complaint renders defendant's assumption of a 100% violation rate unreasonable. (Doc. Nos. 8 at 15; 17 at 4.) The complaint before the court does allege that the employment of plaintiff and "many" Sub-Class members "has terminated and DEFENDANT has not tendered payment of all wages owed as required by law." (Doc. No. 1 at 51.) However, the Sub-Class encompasses those who "are or previously were employed" by defendant. (Doc. No. 1 at 27.) This language indicates that the Sub-Class contains both current and former employees, but waiting time penalties would be restricted to those who have already left employment. *See McGrath*, 2023 WL 5507175, at *2 ("Every class member, by virtue of being a member of the class, has not received, and is necessarily owed, outstanding wages. And *every member of the subclass of terminated employees* was necessarily owed money at termination and are consequently eligible for waiting time penalties.") (emphasis added) (citation omitted). Walmart's assumption of a 100% violation rate is restricted to a subset of the Sub-Class—those who are no longer employed at the company and would be eligible for waiting time penalties—and thus is not assuming a true 100% violation rate across the entire class. *See Gonzalez v. Barnard Constr. Co., Inc.*, No. 22-CV-00534-AJB-KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("[The] [d]efendants calculated the waiting time penalties using only the number of class members the VP of Finance determined to have been separated from employment . . . . This is not the full class size, and thus, not a 100% violation rate."). Therefore plaintiff's use of "many" in the allegations of his complaint would appear to the fact that not all Sub-Class

members have been terminated, as would be required to obtain waiting time penalties. *See Melendez v. Smurfit Kappa N. Am., LLC*, No. CV 25-10508-DMG (EX), 2026 WL 1454300, at *5–6 (C.D. Cal. May 21, 2026) (interpreting the plaintiff's assertion of waiting time penalties "on behalf of herself and 'many other members of the Class . . .'" as reasonably supporting an "assumed 100% violation rate . . . because for wait time penalties, a 100% violation rate simply means that all terminated class members were not timely paid their final wages as alleged"). "Moreover, even if [p]laintiff could expressly disavow [his] own ability to recover waiting time penalties" flowing from defendant's alleged failure to pay minimum wages, "such disavowal would not bind the other putative members of the class." *McGrath*, 2023 WL 5507175, at *3 (citing *Standard Fire*, 568 U.S. at 592–93). Therefore, defendant's assumption that all California Labor Sub-Class members no longer employed at a Walmart facility are owed waiting time penalties is reasonable. *See Perez*, 131 F.4th at 809 ("[A]n assumption is not unreasonable simply because another equally valid assumption may exist.").

Finally, the court considers the number of days that defendant allegedly withheld payment from plaintiff and Sub-Class members, a subject as to which defendant provides no direct evidence. (*See* Doc. Nos. 1, 11.) Rather, defendant assumes that the full 30-day maximum applies because it did not pay any purportedly untimely wages to any worker in its calculation "at any time after their termination dates." (Doc. No. 1 at 7.) Plaintiff argues that defendant lacks evidence to support its assumption, (Doc. No. 8 at 18), and that the Ninth Circuit has recognized that a "percentage of employees might possibly not be entitled to the maximum penalty" in some situations. (Doc. No. 17 at 8) (quoting *Jauregui*, 28 F.4th at 994). However, in his complaint, plaintiff demands "thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment" during the class period. (Doc. No. 1 at 52.) The Ninth Circuit has specifically rejected the view that the defendant must present evidence to support the use of a maximum 30 days in waiting time penalties under circumstances where that assumption was reasonable. *Jauregui*, 28 F.4th at 993–94. It is "not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the [three] years at issue in this case would have happened more than 30 days before the suit was filed,

which would entitle the employees to the 30-day penalty." *Id.* at 994 (emphasis removed); *Chan v. Panera, LLC*, No. 2:23-CV-04194-JLS-AFM, 2023 WL 6367677, at *4 (C.D. Cal. Sept. 28, 2023) ("For a terminated employee to accrue only a partial penalty, [the defendant] would have had to remedy all wage violations for that employee at some point after termination but before 30 days elapsed. . . . [T]here is nothing in the Complaint to suggest that violations, once they happened, were ever remedied. It makes sense to assume that a terminated employee who was deprived of overtime and premium pay as a result of the company's general practice did not receive those wages after termination.")

Therefore, it is reasonable for defendant to assume that the putative class includes approximately 5,800 former employees, who worked at least 3.5 hours per day at $15.00 per hour, all of them had some owed wages withheld, and all can collect the full 30 day-penalty. Accordingly, the court calculates the amount in controversy as to plaintiff's waiting time penalties claim to be $9,135,000.[9] Given the reasonableness of this calculation, the court need not also calculate the amount in controversy associated with plaintiff's remaining claims or attorney's fees because the total amount in controversy in this case is well over the $5 million minimum required under CAFA.

**CONCLUSION**

For the reasons explained above,

1. Plaintiff's motion to remand (Doc. No. 8) is DENIED;
2. The court hereby SETS the Initial Scheduling Conference in this matter for December 14, 2026 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom; and

/////

/////

---

[9] The court calculates the amount in controversy for plaintiff's waiting time penalties claim as follows: 5,800 putative class members who terminated during the Sub-Class period × 3.5 hours per day × 30 days × $15.00 average rate of pay = $9,135,000. *See Ortega v. ITS Techs. & Logistics, LLC*, 21-cv-00562-JWH-KK, 2021 WL 4934978, at *5 n.34 (C.D. Cal. Oct. 22, 2021) (providing the formula for calculating waiting time penalties).

3. The parties are directed to file an updated joint status report regarding scheduling no later than November 23, 2026.

IT IS SO ORDERED.

Dated: **October 28, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE